**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

DUANE A. DAVIDS and JULIE A.
DAVIDS,

              Plaintiffs,

vs.

NORTH IOWA COMMUNITY
SCHOOL DISTRICT, JULIE
BALVANCE, JAMIE THOMSEN,
MICHAEL HOLSTAD, RANDE
GIESKING, MATT DUVE, RENAE
SACHS, TOM RYGH, ANDREA
BAKKER, DIEDRE WILLMERT, and
LARRY HILL,

              Defendants.

No. C 14-3002-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**................................................................3
    A.    *Factual Background* ...............................................3
        1.    *Facts deemed admitted* .................................3
        2.    *The parties*................................................4
        3.    *The dispute* ...............................................5
    B.    *Procedural Background* ..........................................7

II.   **LEGAL ANALYSIS** ...................................................10
    A.    *Summary Judgment Standards*................................10
    B.    *The Davidses' Federal Claims*................................11
        1.    *The statutory vehicles for the claims* .................11
        2.    *The right at issue* .......................................14
            a.    *Arguments of the parties* .....................14
            b.    *Analysis* ....................................16
        3.    *The equal protection claims* .........................21
            a.    *Arguments of the parties* .....................21

| | | | | |
|---|---|---|---|---|
| | | *b.* | *Analysis* ........................................................ | *22* |
| | | | *i.* | *The § 1983 equal protection claim* ................... *22* |
| | | | *ii.* | *The § 1985 equal protection conspiracy claim* ...................................................... *24* |
| | *4.* | *The due process claims* ............................................... *26* |
| | | *a.* | *Arguments of the parties* ...................................... *26* |
| | | *b.* | *Analysis* ........................................................ *27* |
| | | | *i.* | *The "substantive" due process claim* ................ *27* |
| | | | *ii.* | *The "procedural" due process claim* ................. *29* |
| | *5.* | *The claim that § 282.8 is unconstitutional* .......................... *30* |
| | | *a.* | *Arguments of the parties* ...................................... *30* |
| | | *b.* | *Analysis* ........................................................ *31* |
| *C.* | *The Davidses' State-Law Claim* ............................................... *34* |
| | *1.* | *Arguments of the parties* ............................................... *35* |
| | *2.* | *Analysis* ................................................................ *36* |
| *III.* | *CONCLUSION* ............................................................... *37* |

Do the plaintiffs, who reside in an Iowa school district, have viable constitutional and state-law claims arising from the Iowa school district's refusal to pay for the plaintiffs' children to attend school in Minnesota? The Iowa school district and its past and present board members and officials say no and seek summary judgment on all of the plaintiffs' claims. The plaintiffs contend that they have viable constitutional claims of violations of equal protection, substantive due process, and procedural due process that impinge on their right to a free public education for their children. They also contend that they have a viable state-law claim that the defendants' failure to reimburse the Minnesota school district for educating their children, while receiving funds for each of their children, constitutes unjust enrichment and/or fraud.

# I.     INTRODUCTION

## A.     Factual Background

The factual background stated here does not necessarily encompass all of the parties' factual allegations in support of and resistance to summary judgment. Rather, it states sufficient facts, undisputed and disputed, to put in context the parties' arguments on summary judgment. Unless otherwise indicated, the facts stated here are undisputed.

### 1.     Facts deemed admitted

The plaintiffs failed to respond to the defendants' Statement Of Material Facts In Support Of Motion For Summary Judgment (docket no. 14-3) in the manner required by applicable local rules. In pertinent part, N.D. IA. L.R. 56 requires the plaintiffs to file "[a] response to the [movant's] statement of material facts in which the resisting party *expressly admits, denies, or qualifies each of the moving party's numbered statements of fact.*" N.D. IA. L.R. 56(b)(2) (emphasis added). In their resistance brief, however, the plaintiffs simply state that they "have read the Statement of Material Fact in Support of the Defendants' Motion for Summary Judgment and would state as follows," then make three additional statements. *See* Plaintiffs' Brief In Support Of Plaintiffs' Resistance To Defendants' Motion For Summary Judgment (Plaintiffs' Brief) (docket no. 23-1), 3-4. Worse still, the plaintiffs' three additional statements, which I will quote, below, are not factual statements at all, but arguments and legal conclusions. The local rule also provides, "The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact." N.D. IA. L.R. 56(b). Consequently, I have deemed *all* of the defendants' allegations in their Statement Of Material Facts In Support Of Motion For Summary Judgment (docket no. 14-3) to be admitted.

Notwithstanding my conclusion that I must deem the defendants' factual allegations to be admitted, I will identify relevant *additional* facts on which the plaintiffs rely. The plaintiffs have identified their Affidavit (docket no. 23-3), along with a copy of the Iowa-Minnesota Tuition Reciprocity Agreement, as their Statement Of Material Facts In Support Of Their Resistance To The Motion For Summary Judgment (docket no. 23-2), with no citations to the supporting record for any factual allegations. This is another failure to comply with applicable local rules, which require that "[e]ach individual statement of additional material fact must be . . . supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support each statement, with citations to the appendix containing that part of the record." N.D. IA. L.R. 56(b).[1] Presumably, the plaintiffs consider their affidavit to be "self-supporting," without citation to further support in the record. I will assume, without deciding, that the plaintiffs are correct.

## 2. *The parties*

Plaintiffs Duane and Julie Davids are residents of Lakota, Kossuth County, Iowa. They pay both property taxes and income taxes in Iowa. The Davidses have lived in the North Iowa Community School District (NICSD) for 24 years. They have three children who, at pertinent times, were of school age, although one is now an adult. All three children have or are attending schools in the Blue Earth Area Public School District (Blue Earth District) in Minnesota, not schools in the NICSD. The Davidses' residence is 7.75 miles from the NICSD Elementary School and the NICSD High School, 17.6 miles from the Blue Earth District Elementary School, and 18.1 miles from the Blue Earth District

---

[1] The defendants have noted this failing in footnote 1 to their Response To Plaintiffs' Statement Of Facts (docket no. 27) but have, "[i]n an abundance of caution, . . . chosen to respond to Plaintiffs' affidavit in conformance with LR 56(d)."

High School. The defendants in this action are the NICSD; Julie Balvance, Jamie Thomsen, Michael Holstad, Rande Giesking, Matt Duve, and Renae Sachs, who are current members of the NICSD Board of Directors; Tom Rygh, Andrea Bakker, and Diedre Willmert, who were members of the NISCD Board of Directors as of August 11, 2008; and Larry D. Hill, who is the former superintendent of the NICSD.

### 3. *The dispute*

The NICSD admits that it has received funding from the Iowa Department of Education (IDOE) for the purpose of educating each of the Davidses' children. The Davidses have admitted that, if they had chosen to send their children to school in the NICSD, their children would have received a free education, paid with public funds. The NICSD maintains—and the Davidses have not properly disputed—that the Davidses' children would have been eligible for "open enrollment" in another school district in Iowa, for which the NICSD would have provided funding pursuant to state law, had the Davidses completed the appropriate "open enrollment" paperwork by the appropriate deadlines.

In 2008, the Davidses asked the NICSD to negotiate a tuition reimbursement/sharing agreement with the Blue Earth District. The parties agree that the Blue Earth District is and has been willing to enter into a tuition reimbursement agreement with the NICSD. The parties also agree that Iowa and Minnesota have entered into a Tuition Reciprocity Agreement, but they apparently dispute whether that Tuition Reciprocity Agreement requires, or only authorizes, districts in the two states to enter into sharing or reimbursement agreements for students who are residents of one state to be educated in the other. In response to the Davidses' request, on August 11, 2008, the NICSD Board approved a measure to have Superintendent Hill investigate whether a tuition reimbursement would be feasible for the NICSD. The NICSD Board ultimately chose not to enter into a sharing agreement with the Blue Earth District, however. The

Board did not believe that it was in the NICSD's best interest to provide financial support to resident students attending out-of-state schools. Specifically, the NICSD Board believed that such a sharing agreement could have increased the number of students leaving the NICSD and, thus, could have been detrimental to the NICSD. The NICSD Board believed that whether or not to enter into a sharing agreement was left to the local school board's discretion, pursuant to IOWA CODE § 282.8. The Davidses attempted to appeal the NICSD Board's decision not to enter into a sharing or reimbursement agreement with the Blue Earth District to the IDOE, but the IDOE refused to hear that appeal.

On November 14, 2011, the Davidses received a letter from the Blue Earth District requesting tuition payment from them for their children's education. By letter to the president of the NICSD Board, dated March 7, 2012, the Davidses again asked the NICSD to enter into a tuition reimbursement agreement with the Blue Earth District. On March 12, 2012, however, the NICSD Board again declined to enter into a sharing agreement with the Blue Earth District that would have allowed the Davidses' children to attend school in the Blue Earth District with reimbursement from the NICSD. The Davidses also attempted to appeal that decision to the IDOE, but the IDOE refused to hear that appeal. The Davidses have paid tuition to the Blue Earth District in the amounts of $10,248 for the 2011-2012 school year; $10,448 for the 2012-2013 school year; and $10,604 for the 2013-2014 school year. They also allege that they have a tuition bill owing for the 2014-2015 school year.

The Davidses assert the following "facts" in response to the defendants' Statement Of Material Facts In Support Of Motion For Summary Judgment:

> a) the fact that the [NICSD] Board does not believe it was in its best interest to financially support resident students attending out-of-state schools is contrary to the statutory intent of Section 282.8, Code of Iowa, and the Iowa-Minnesota

> Tuition Reciprocity Agreement entered into in 2014 and made
> a part of our Statement of Material and Uncontested Facts;
>
> b) the [NICSD] asserts that a sharing agreement could have
> potentially increased the number of students leaving the
> school district, but ignores the fact that they are collecting
> reimbursement from the [IDOE] for students they do not
> educate, and that a sharing agreement could potentially
> increase the number of students coming from Minnesota to
> their school district; and
>
> c) the [NICSD] relies upon a provision in Section 282.8,
> requiring that the out-of-state school district be closer to the
> home of the students involved than the resident school district,
> but there is no rational basis for that requirement, and the
> open enrollment statute, Section 282.18, Code of Iowa, does
> not have a distance restriction for open enrollment.

Plaintiffs' Resistance To Defendants' Motion For Summary Judgment (docket no. 23),
3-4.

There is not now, nor has there been, at any pertinent time, a tuition sharing or
reimbursement agreement between the NICSD and any other out-of-state school district.
The NICSD has not reimbursed the Blue Earth District for any part of the costs of
educating the Davidses' children.

### B.    Procedural Background

The Davidses filed their Complaint (docket no. 3) in this matter on January 24,
2014, pursuant to 42 U.S.C. §§ 1983, 1985, 1988, and the Fourteenth Amendment to
the United States Constitution, challenging what they allege is the denial by the defendants
of due process and equal protection, and also asserting a state-law claim pursuant to this
court's supplemental jurisdiction under 28 U.S.C. § 1367. Somewhat more specifically,
the Davidses allege that their children "are entitled to a free education, paid with public

funds," Complaint at ¶ 21; that the NICSD and the individual defendants are "state actors"; and that the NICSD's receipt of funds for the education of the Davidses' children, but failure to reimburse the Blue Earth District, constitutes fraud and unjust enrichment and denies them equal protection of the law and due process. *Id.* at 23-29. They seek declaratory judgment that the defendants' actions are contrary to law, administrative rule, and administrative regulations; deny them equal protection under the law; and constitute unjust enrichment for which they should be compensated. *Id.* at Prayer. They also seek a declaration that IOWA CODE § 282.8 is unconstitutional to the extent that it authorizes an in-state district to designate an out-of-state school across the state line for attendance of pupils only "when the public school in the adjoining state is nearer than any appropriate public school in a pupil's district of residence or in Iowa." *Id.*

In addition to the defendants already identified, above, the Davidses' Complaint named the IDOE as a defendant. Although the NICSD and the individual defendants filed a joint Answer (docket no. 5), on March 31, 2014, the IDOE filed a Motion To Dismiss (docket no. 7), on April 4, 2014. By Memorandum Opinion And Order (docket no. 10), filed May 9, 2014, I granted the IDOE's Motion To Dismiss, on the grounds that the IDOE is not a "person" amenable to suit under 42 U.S.C. § 1983, that sovereign immunity bars the Davidses' claims against the IDOE, and that the Davidses made insufficient allegations to support a "conspiracy" claim pursuant to 42 U.S.C. § 1985, and I dismissed the IDOE from this action. Eventually, both a Scheduling Order (docket no. 11) and a Trial Management Order (docket no. 12) were filed, and trial was scheduled for August 31, 2015.

On February 19, 2015, the remaining defendants filed their Motion For Summary Judgment (docket no. 14), which is now before me. In an Order (docket no. 15), filed April 8, 2015, I noted that the time for any response by the Davidses had expired without

them filing any response or a request for an extension of time to do so and that, under these circumstances, I could simply grant the defendants' Motion For Summary Judgment. *See* N.D. I*A*. L.R. 7(f), 56(c). In the interests of justice, however, I concluded that I would, instead, set a final deadline of April 22, 2015, for the Davidses to respond to the defendants' Motion For Summary Judgment, in the manner required by N.D. I*A*. L.R. 56, and I warned that, if the plaintiffs did not file a response by that deadline, I would, in all likelihood, grant the defendants' Motion For Summary Judgment without further notice. *See* N.D. I*A*. L.R. 56(c). The Davidses filed no timely response, so, by Order (docket no. 16), filed April 28, 2015, I granted the defendants' Motion To Dismiss, in light of the Davidses' failure to respond, and directed entry of judgment accordingly.

On May 5, 2015, the Davidses filed a Motion To Set Aside Judgment (docket no. 18), to which the defendants filed a Resistance (docket no. 19), on May 13, 2015. At oral arguments on that motion on June 9, 2015, the Davidses' counsel professed to have received no automatic or other notice of the filing of the defendants' Motion For Summary Judgment or my "wake up" order requiring a response. I entered a Memorandum Opinion And Order (docket no. 22), on June 9, 2015, in which I noted that "the precise reasons for the failure of the plaintiffs to receive automatic email notifications of the filing of the defendants' Motion For Summary Judgment and my Order requiring a response to that motion are still not known." Memorandum Opinion And Order at 3. Nevertheless, I concluded that it was appropriate to set aside the Judgment and to give the parties a full and fair chance to litigate the defendants' Motion For Summary Judgment and, if appropriate, to proceed to trial. *Id*. I also gave the Davidses to and including June 23, 2015, to file a resistance to the defendants' Motion For Summary Judgment. *Id*. at 4.

On June 23, 2015, the Davidses filed their Resistance To Defendants' Motion For Summary Judgment (docket no. 23). On June 30, 2015, the defendants filed their Reply (docket no. 26) and their Response To Plaintiffs' Statement Of Facts (docket no. 27). Although the defendants requested oral arguments on their Motion For Summary Judgment, I find that the parties' briefs are sufficient to address the merits of that Motion. Therefore, I will consider the defendants' Motion For Summary Judgment fully submitted on the parties' written submissions.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standards

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact *and* that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, --- U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

## B. The Davidses' Federal Claims

### 1. The statutory vehicles for the claims

The Davidses have brought their federal claims pursuant to three federal civil rights statutes. The first such statute, 42 U.S.C. § 1983, was designed to provide a

11

"broad remedy for violations of federally protected civil rights." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish both of the following: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

As to the Davidses' specific claims, a violation of rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution may be alleged in a suit pursuant to § 1983. *See Ellebracht v. Police Bd. of Metro. Police Dep't of St. Louis*, 137 F.3d 563, 566 (8th Cir. 1998). To succeed on such a claim, the plaintiff must prove (1) that he or she was singled out and treated differently by state actors from persons similarly situated with respect to some right or privilege created by state or federal law, and (2) that the plaintiff was singled out on the basis of a prohibited characteristic, such as race. *See id.*

Claims of impingements on liberty or property interests protected by the Due Process Clause of the Fourteenth Amendment may also be brought pursuant to § 1983. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Such claims do not arise, however, whenever a person has only "an abstract need or desire for," or "unilateral expectation of," a benefit. *Id.* Rather, they arise from "legitimate claim[s] of entitlement . . . defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Courts cannot "circumvent the *state law* inquiry critical to determining whether a property interest exists," that is, whether state law establishes an *entitlement* to the property at issue. *Crews v. Monarch Fire Protection Dist.*, 771 F.3d 1085, 1090 (8th Cir. 2014) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)).

Section 1983 may also be used to challenge the constitutionality of a state statute, as the Davidses have done by asserting an equal protection challenge to the

constitutionality of IOWA CODE § 282.8. *Cf. Morgan v. City of Florissant*, 147 F.3d 772, 773 (8th Cir. 1998) (§ 1983 action by the residents of an unincorporated area of Missouri challenging the constitutionality of a state municipal annexation statute). The degree of scrutiny applied to the state statute depends upon whether or not the state statute impinges upon a protected class or a fundamental state or federal right. *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999).

The second civil rights statute on which the Davidses rely is 42 U.S.C. § 1985. In pertinent part—that is, § 1985(3)—this statute "'provide[s] a civil cause of action when *some otherwise defined federal right*—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy.'" *Henley v. Brown*, 686 F.3d 634, 641 (8th Cir. 2012) (emphasis in the original) (quoting *Great Am. Fed. Savs. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)). Thus, where the federal right to equal protection is based on impingement of some *state-created* right, if there is no underlying state-created right on which the claim can be based, there can be no conspiracy claim pursuant to § 1985(3).

The third federal civil rights statute on which the Davidses rely is 42 U.S.C. § 1988. Section 1988(a) provides that a court's jurisdiction over civil rights statutes "shall be exercised and enforced in conformity with the laws of the United States." As the Eighth Circuit Court of Appeals has explained, § 1988(a) also "direct[s] federal courts to apply state law when federal law proves deficient or unable to provide a suitable remedy." *Gill v Mciejewski*, 546 F.3d 557, 565 (8th Cir. 2008). Thus, "Section 1988 . . . only applies when federal law is inadequate," such as when it provides no remedy under § 1983 for wrongful death. *Id.* Where federal law is deficient, federal courts look to state law "for a suitable remedy not inconsistent with the Constitution and laws of the United States." *Id.* It is simply not clear what "claim," invoking state law, because federal law is deficient, the Davidses are attempting to assert pursuant to

§ 1988(a).[2]   Indeed, neither the Davidses nor the defendants mention § 1988 in their summary judgment briefing.  Therefore, I will not discuss § 1988 further in this opinion.

The critical lesson to be gleaned from this brief summary of the statutory vehicles that the Davidses have invoked for their claims is that *none* of their claims can survive, unless the Davidses demonstrate a right to payment by the NICSD for the education of their children in the Blue Earth District in Minnesota to which a federal constitutional right to equal protection or due process could apply.  *See, e.g., Crews*, 771 F.3d at 1090 (explaining that, when confronted with a claim of a violation of due process, courts cannot "circumvent the *state law* inquiry critical to determining whether a property interest exists," that is, whether state law establishes an *entitlement* to the property at issue).  This the Davidses cannot do, for the reasons set out below.

### 2.   *The right at issue*

#### a.   *Arguments of the parties*

The Davidses have not attempted to identify any *federal* right to payment by the NICSD for the education of their children in the Blue Earth District.  Rather, they argue that they have a state-created right to a free education for their children, paid with public funds, which they argue extends to their right to obtain that education from a Minnesota school district at the expense of an Iowa school district.  Indeed, they argue that the state right to a free, public education is a "fundamental" right.   Although they acknowledge that IOWA CODE §§ 282.7(3) and 282.8 use "may" in reference to the authority of in-

---

[2] Section 1988(b) provides an exception to the rule that parties ordinarily are required to bear their own attorney's fees, because it "provides that '[i]n any action or proceeding to enforce a provision of . . . [§] 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]"  *See Doe v.* Nixon, 716 F.3d 1041, 1048 (8th Cir. 2013).  It is possible that the Davidses have invoked only this subsection of § 1988, but their Complaint and their summary judgment briefing are silent on the role of § 1988 in this litigation.

state school districts to enter into sharing agreements with contiguous out-of-state school districts, they argue that there are circumstances in which "may" should be given a mandatory meaning in light of legislative intent. Here, they draw a right to payment for out-of-state education from what they argue is a clearly delineated legislative policy of providing a wide range of educational choices for children and their parents, citing IOWA CODE § 282.18, and they argue that this legislative policy includes both intrastate and interstate sharing agreements. They also argue that, implicit in the provisions of IOWA CODE §§ 282.20-282.24 is that a resident school district, which is not serving a student, but receiving state funding per student, should be reimbursing the school district that serves the student, which they argue "mandates" a reciprocal agreement called for by § 282.8 for students who are educated out-of-state.

The defendants argue that, whether or not the right to a free, public education under Iowa law is a "fundamental right," that right is inapplicable here. They point out that the Davidses have conceded that, if they had chosen to send their children to school in the NICSD, their children would have received a free education, paid with public funds. The defendants also argue that the only "property right" on which the Davidses' claims could be based is an alleged right to have their children's education across state lines in Minnesota paid for by an Iowa school district. The defendants argue that there simply is no cognizable property right to reimbursement of an out-of-state district by an in-state school district for the education of students who choose not to attend school in their in-state district. They point out that IOWA CODE § 282.7(3) provides only that an in-state district "may," not "must," negotiate an agreement for attendance of students in a contiguous out-of-state school district pursuant to IOWA CODE § 282.8. Thus, they argue that there is no mandatory language that creates the right alleged by the Davidses. They also point out that the Davidses have cited no legislative intent or history for the pertinent sections of the Iowa Code in support of their argument that the use of "may" in

the pertinent statutes should be understood as mandatory. Rather, they argue, the statutes on which the Davidses rely as purported support for that argument actually relate only to in-state "open enrollment," not to out-of-state enrollment. The defendants point out that courts have held that there is no right of students to a choice of schools and that mandatory assignment to particular public schools, based on residence or other factors, is clearly permissible. Finally, the defendants argue that, where discretionary state action is at issue, treating like individuals differently is an accepted consequence of that discretion.

### b. Analysis

As an initial matter, there is no fundamental right to education under federal law. *See Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cnty. v. Beebe*, 578 F.3d 753, 761 (8th Cir. 2009) ("[T]he Supreme Court has rejected the proposition that education is a fundamental right under the Fourteenth Amendment." (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 34–35 (1973)). Indeed, the United States Supreme Court has recognized the importance of public education, but has concluded that education "is not among the rights afforded explicit protection under our Federal Constitution." *Rodriguez*, 411 U.S. at 35. Thus, the Davidses must point to some provision of the Iowa Constitution or Iowa law as the source of the right or rights that they allege.

It is curious that, despite their assertion that they have a "fundamental right" to a free education for their children, paid with public funds, the Davidses have nowhere identified the source of such a right in the Iowa Constitution or Iowa laws. In their Complaint, they simply allege, without any supporting authority, that, because they are taxpayers in the state of Iowa, "their children should be entitled to a free education, paid with public funds." Complaint, ¶ 21. Likewise, they have not identified the alleged source of the right in Iowa to a free public education in either their Resistance To Defendants' Motion For Summary Judgment (docket no. 23) or their Brief In Support Of

Plaintiffs' Resistance To Defendants' Motion For Summary Judgment (Plaintiffs' Brief) (docket no. 23-1). *See, e.g.,* Plaintiffs' Brief at 9 (alleging that "actions by state officials" have "deprived them of constitutional guaranteed rights," but not citing any part of the Iowa Constitution or other source of law granting any rights); *id.* at 11 (asserting that they "have stated a straightforward claim of denial of equal protection in being denied a free, public education," but not citing any part of the Iowa Constitution or any other source of law granting any such right). Indeed, after acknowledging that they must demonstrate that they have a legally cognizable property interest in a free public education, they fail even to attempt to show the source of such a legally cognizable property interest. *See id.* at 10-11.

Iowa courts considering the nature and extent of rights to education under the Iowa Constitution have *reserved* the question of whether any provision of the Iowa Constitution establishes enforceable rights to a public education. *See Pippen v. State*, 854 N.W.2d 1, 31 (Iowa 2014) (noting that this "very important constitutional issue," among others, "under the Iowa Constitution . . . instead of being decided earlier, remain very much alive today" (citing, *inter alia*, *King v. State*, 818 N.W.2d 1, 47 n.52 (Iowa 2012) (Appel, J., dissenting), as reserving the question of whether article IX, division 1, section 12 of the Iowa Constitution provides enforceable rights to a public education)); *King v. State*, 818 N.W.2d 1, 15-16 (Iowa 2012) (suggesting that an exchange among delegates to the 1857 Iowa constitutional convention indicated that the delegates "did not believe that section 3, as it was ultimately approved, contained a right to a free public education"; also observing that, "if section 3 did not assure a right to a free public education, it seems untenable to argue that section 3 contained a judicially enforceable right to a free public education *with certain minimum standards of quality*" (emphasis in the original); and observing, "Iowa's constitutional delegates had an opportunity to make a guarantee of free public education part of 'organic law,' and declined to do so"; but ultimately

"defer[ring] for another day the question whether education *can* amount to a fundamental right under the Iowa Constitution," because the plaintiffs' allegations in their petition, "even if true, do not amount to a deprivation of such a right" (emphasis in the original)).

Having failed to cite any portion of the Iowa Constitution in support of the right or rights that they claim, the Davidses rely on Iowa statutes as the basis for their right to compensation from an in-state school district to an out-of-state school district for the education of their children. As the defendants point out, however, both IOWA CODE § 282.7(3) and § 282.8 provide only that an in-state school district "may," not "must," enter into an agreement for the education of Iowa students in an out-of-state school district. *See* IOWA CODE § 282.7(3) ("[A] school district *may* negotiate an agreement under subsection 1 for attendance of its pupils in a school district located in a contiguous state subject to a reciprocal agreement by the two state boards in the manner provided in this subsection." (emphasis added)); IOWA CODE § 282.8 ("The boards of directors of school districts located near the state boundaries *may* designate schools of equivalent standing across the state line for attendance of both elementary and high school pupils when the public school in the adjoining state is nearer than any appropriate public school in a pupil's district of residence or in Iowa." (emphasis added)). The Davidses are correct that even permissive language, using "may," must be disregarded or understood to be mandatory, in some circumstances. *See Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 645 (Iowa 2013) (acknowledging that the word "may" "may have a mandatory meaning in some circumstances" (citing *Iowa National Indus. Loan Co. v. Iowa State Dep't of Revenue*, 224 N.W.2d 437, 440 (Iowa 1974)). One such example is where the ordinary meaning of the language used conflicts with the general purpose of the legislation. *See The Sherwin-Williams Co. v. Iowa Dep't. of Revenue*, 789 N.W.2d 417, 429 (Iowa 2010) (acknowledging that, where literal terms of a statute conflict with the purpose of the legislation, the court will ignore the literal meaning of

the statutory terms (citing *State v. Hopkins*, 465 N.W.2d 894, 896 (Iowa 1991)). On the other hand, "the legislature's use of the word 'may' usually indicates legislative intent for the statute to apply permissively." *Sierra Club Iowa Chapter*, 832 N.W.2d at 645. Thus, a strong showing must be made "that legislative intent would be undermined" by reading the terms used as permissive "under the facts of th[e] case" "before [the court] will ignore the statutory [terms]." *The Sherwin-Williams Co.*, 789 N.W.2d at 429. The Davidses have not made such a strong showing.

An examination of the specific "open enrollment" statute on which the Davidses rely reveals the flaws in their argument. In providing for "open enrollment" between school districts in Iowa, the legislature stated,

> 1. a. It is the goal of the general assembly to permit a wide range of educational choices *for children enrolled in schools in this state* and to maximize ability to use those choices. It is therefore the intent that this section be construed broadly to maximize parental choice and access to educational opportunities which are not available to children because of where they live.

IOWA CODE § 282.18(1)(a) (emphasis added). Even "construed broadly," this provision indicates an intent to permit a wide range of educational choices "*for children enrolled in schools in this state*," not an intent to permit a wide range of educational choices *for children who choose to enroll out-of-state*. Moreover, even in the case of "open enrollment" between school districts in Iowa, there is no absolute right to education in a school outside of the district in which the student resides, because, for example, a "receiving district" can deny a transfer request if "the receiving district has insufficient classroom space for the pupil." IOWA CODE § 282.18(2)(b). The Davidses have argued that the Tuition Reciprocity Agreement between Iowa and Minnesota supports their claim, but they have failed to cite any provision of that Agreement that requires or that indicates an intent to make it mandatory for any in-state school district to enter into a

sharing agreement with any out-of-state district. At most, the Agreement may facilitate otherwise *permissible* sharing agreements, but it certainly does not make them mandatory when a pupil requests out-of-state schooling.

The Davidses also overlook the fact that, at the same time that the Iowa legislature stated a goal of maximizing educational choices for children *enrolled in schools in this state*, it authorized out-of-state education *only* in limited circumstances. Specifically, the Iowa legislature authorized out-of-state education *only* in the case of "school districts located near the state boundaries," and then *only* "when the public school in the adjoining state is nearer than any appropriate public school in a pupil's district of residence or in Iowa." IOWA CODE § 282.8. I realize that the Davidses challenge the constitutionality of what they call the "distance restriction" on attendance in out-of-state schools stated in this provision. I will consider that challenge below. For present purposes, however, it is enough to observe that the obvious legislative intent and purpose behind this provision differs considerably from the legislative intent and purpose behind the "open enrollment" provision. *See Des Moines Area Regional Transit Auth. v. Young*, ___ N.W.2d ___, ___, 2015 WL 3533268, *3 (Iowa June 5, 2015) ("When interpreting statutes, we look to the intent of the legislature based on the words used and what interpretation will best effect the purpose of the statute."). The intent and purpose of § 282.8, in light of the words used and the purpose of the provision, is to *permit*, but not *require*, out-of-state school attendance *as a matter of convenience*, that is, when a student in a border area resides closer to an out-of-state school than he or she does to an in-state school.

To put it another way, the Davidses have shown only that they have "an abstract need or desire for," or "unilateral expectation of," payment by an in-state school district for the education of their children in an out-of-state school district. *See Roth*, 408 U.S. at 577 (noting that such "an abstract need or desire for," or "unilateral expectation of," a benefit does not establish the property or liberty interest required to support a due

process claim). They have failed to show any "legitimate claim[s] of entitlement" to payment by an in-state school district for the education of their children in an out-of-state school district that is "defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

Where the source of a state-law right to a free education is, at best, uncertain, there is absolutely no source of a state-law right to a free education out-of-state paid for by an in-state school district. Because the Davidses' federal claims pursuant to §§ 1983 and 1985 fail on this threshold requirement, as a matter of law, the defendants are entitled to summary judgment on all of those claims. *See Torgerson*, 643 F.3d at 1042-43 (stating the standards for summary judgment); *Cremona*, 433 F.3d at 620 (explaining that summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute).

In addition, or in the alternative, I will consider that defendants' other grounds for summary judgment on the Davidses' federal claims.

### 3. *The equal protection claims*

#### a. *Arguments of the parties*

The defendants contend that the Davidses cannot demonstrate that they violated the Equal Protection Clause, because there is no right to association through choice of school. Indeed, they contend that the courts have recognized that mandatory assignment to public schools based on place of residence or other factors is clearly permissible. The defendants also argue that the Davidses have failed to show how their children were treated differently—that is, in a discriminatory manner—from similarly-situated children, because they have pointed to no evidence indicating a discriminatory application of the law or a discriminatory motive in choosing not to enter into a tuition sharing agreement with the Blue Earth District. They contend that the NICSD permissibly exercised its discretion under Iowa law to decline to enter into such an agreement. As to the Davidses'

equal protection conspiracy claim, the defendants contend that the Davidses have failed to identify the class to which they belong, let alone to offer a scintilla of evidence of an invidious discriminatory animus. Moreover, the defendants point out that the IDOE was correct when it argued, in its Motion To Dismiss, that the Davidses' Complaint does not even mention the word "conspiracy" or allude to any agreement indicative of a conspiracy, and the defendants now add that the Davidses' discovery responses have not identified any evidence of such an agreement.

The Davidses appear to argue that students seeking out-of-state schooling are similarly-situated to students seeking in-state "open enrollment," so that the imposition of additional requirements—such as the "distance restriction"—on out-of-state schooling are discriminatory and violate equal protection. They assert that the failure of the defendants to compensate the Blue Earth District for the education of their children—particularly while retaining state funds provided to educate their children (money they contend that they indirectly paid through their property taxes)—denies them equal protection, because it denies them property (a free, public education), while imposing more than $40,000 in additional costs on them. Thus, they contend that they have a straightforward claim of denial of equal protection in being denied a free, public education.

In reply, the defendants suggest that the Davidses' argument that they are similarly-situated to students seeking "open enrollment" is strained, where out-of-state schooling and in-state "open enrollment" are subject to different statutory requirements.

### b. Analysis

#### i. The § 1983 equal protection claim

As relevant, here, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. As I

explained briefly, above, a violation of that right may be alleged in a suit pursuant to § 1983, in which the plaintiff must prove (1) that he or she was singled out and treated differently from persons similarly situated, and (2) that the plaintiff was singled out on the basis of a prohibited characteristic, such as race. *See Ellebracht*, 137 F.3d at 566. A plaintiff bears the burden of proving that he is similarly situated to those whom he compares himself to "in all relevant respects." *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). I have elsewhere explained that, "[a]bsent a threshold showing that [the plaintiff] is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim." *Mummelthie v. City of Mason City*, 873 F. Supp. 1293, 1333 (N.D. Iowa 1995) (citing *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995)), *aff'd*, 78 F.3d 589 (8th Cir. 1996) (table op.); *accord Arnold v. City of Columbia*, 197 F.3d 1217, 1220 (8th Cir. 1999) ("To prove their equal protection claim [based on disparate pay], appellants were required, as a threshold matter, to demonstrate that they were treated differently from others similarly situated to them.") (emphasis in the original); *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999) (holding that plaintiff's equal protection claim failed, because he presented no evidence showing that he was treated in a manner different from that accorded other similarly situated individuals). "[D]issimilar treatment of dissimilarly situated persons does not violate equal protection." *Klinger*, 31 F.3d at 731; *accord Arnold*, 197 F.3d at 1221 ("'Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause.'") (quoting *Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996)). "Thus, the initial inquiry in analyzing an equal protection claim is to determine whether a person is similarly situated to those persons who allegedly received favorable treatment." *United States v. Whiton*, 48 F.3d 356, 358 (8th Cir. 1995).

The Davidses' equal protection claim founders on their complete failure to generate any genuine issues of material fact that they are similarly situated in all relevant respects to persons treated more favorably. *See Ellebracht*, 137 F.3d at 566 (stating the elements of the claim); *Whiton*, 48 F.3d at 358 (explaining that whether the plaintiff was similarly situated is the "initial inquiry"); *Mummelthie*, 973 F. Supp. at 1333 (explaining that failure to satisfy this element is fatal to an equal protection claim). As I pointed out, above, the Davidses' children are *not* similarly-situated to pupils seeking "open enrollment" within the state, because they are *not* "enrolled in schools in this state." *See* IOWA CODE § 282.18(1)(a). Furthermore, the Davidses have not even attempted to marshal evidence that the difference in treatment between students seeking to attend school out-of-state and students seeking "open enrollment" in-state is based on a prohibited characteristic, such as race. *See Ellebracht*, 137 F.3d at 566 (explaining that this is the second element of an equal protection claim). The two relevant statues, IOWA CODE § 282.8 and § 282.18, respectively, are absolutely silent on any reliance on any prohibited characteristic as a qualification for any transfer between school districts, and the Davidses have not attempted to show that either statute has a disparate impact on persons with protected characteristics.

The Davidses' failure to generate genuine issues of material fact on either element of their equal protection claim warrants summary judgment in the defendants' favor on that claim. *See Torgerson*, 643 F.3d at 1042-43 (explaining that, to avoid summary judgment, the non-movant must come forward with sufficient evidence to generate genuine issues of material fact on elements of their claim).

### ii.    *The § 1985 equal protection conspiracy claim*

The Eighth Circuit Court of Appeals has explained the elements of a claim of conspiracy to deprive a person of the right to equal protection, pursuant to § 1985, as follows:

> In order to prove the existence of a civil rights conspiracy under § 1985(3), the [plaintiff] must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3).

*Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996); *accord Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 685 (8th Cir. 2012) (quoting *Larson*, 76 F.3d at 1454).  The court has also explained,

> "The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based invidiously discriminatory animus." *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir.1989) (quotation and citation omitted). "Moreover, the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Id*.

*Davis*, 685 F.3d at 684-85.

> Thus, per § 1985(3), [the plaintiff] is required to show, among other things, that there was an actual conspiracy between multiple persons, *see Barstad [v. Murray Cnty.]*, 420 F.3d [880,] 887 [(8th Cir. 2005)], and that "the conspiracy [was] fueled by some class-based, invidiously discriminatory animus," *see McDonald v. City of St. Paul*, 679 F.3d 698, 706 (8th Cir.2012) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir.1996)) (internal quotation marks omitted).

*Keefe*, 785 F.3d at 1224.

The Davidses have also failed to generate genuine issues of material fact on key elements of their equal protection conspiracy claim, in addition to their failure to demonstrate that there is any state-law right to which equal protection could apply. *See Torgerson*, 643 F.3d at 1042-43 (explaining that, to avoid summary judgment, the non-movant must come forward with sufficient evidence to generate genuine issues of material fact on elements of their claim). The Davidses have not pointed to any portion of the record alleging, suggesting, or even hinting that the defendants "conspired" in any way. *See Larson by Larson*, 76 F.3d at 1454 (identifying this as the first element of the claim); *Davis*, 685 F.3d at 684-85 (explaining that the agreement must be alleged with particularity and demonstrated with material facts). Nor have they done so as to the second, "purpose," element of that claim, *id.*, where they have not pointed to any portion of the record alleging, suggesting, or even hinting that the defendants held "'a class-based invidiously discriminatory animus.'" *Davis*, 685 F.3d at 685-86 (citing *City of Omaha Emps. Betterment Ass'n*, 883 F.2d at 652). Thus, the defendants are entitled to summary judgment on the Davidses' equal protection conspiracy claim for these reasons, as well. *See Torgerson*, 643 F.3d at 1042-43.

### 4. The due process claims

#### a. Arguments of the parties

As to the Davidses' due process claims, the defendants argue that, to the extent that the Davidses are attempting to assert a substantive due process claim, none of the conduct alleged is sufficiently egregious or extraordinary to support such a claim. They argue that the lack of any support for a state-law right to have an in-state school district pay an out-of-state district for the education of school children who reside in Iowa demonstrates that there is nothing to suggest that the defendants interfered with the Davidses' children's rights in a way that "shocks the conscience." To the extent that the Davidses are attempting to assert a procedural due process claim, the defendants also

point out that the Davidses are not contending that they were denied a right to a free public education *per se*, but a non-existent right to choose the public school in which to be educated. Thus, the defendants argue, there is simply no process due to the deprivation of such a non-existent right. The defendants also argue that the only process to which the Davidses were entitled was the notice of the defendants' discretionary decision not to enter into a sharing agreement with the Blue Earth District. Similarly, they argue that, where the Davidses have conceded that they do not satisfy the "distance restriction" for attendance at an out-of-state district, so that they would not have qualified even if there were a "right" to out-of-state education under § 282.8, no process was due them.

The Davidses argue that the process to which they were entitled for any deprivation of a significant property interest must have occurred prior to the deprivation and that, without pre-deprivation due process, the action taken is void. The Davidses argue that there is nothing in the record that demonstrates that the defendants provided them with any process before denying their request to enter into a tuition reimbursement or sharing agreement with the Blue Earth District. They argue that, where there has been a due process violation, the remedy is the benefit improperly taken from them.

### b. Analysis

As mentioned, above, claims pursuant to § 1983 may include claims of impingements on property interests protected by the Due Process Clause of the Fourteenth Amendment. *Roth*, 408 U.S. at 577. I will consider separately the Davidses' "substantive" and "procedural" due process claims.

### i. The "substantive" due process claim

"To recover under § 1983 for *a substantive due process violation*, [the plaintiff] must show, among other things, that the offender violated a fundamental right in a way that 'shocks the conscience.'" *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1222 (8th

Cir. 2015) (emphasis added) (citing *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 980 (8th Cir. 2013)).  More specifically still, "'[i]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Folkerts*, 707 F.3d at 980 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  "Whether conduct shocks the conscience is a question of law." *Id.* (citing *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc).

The record here is devoid of evidence from which I could determine, as a matter of law, that the conduct of the defendants "shocks the conscience." *Keefe*, 785 F.3d at 1222 (stating this "shock the conscience" standard); *Folkerts*, 707 F.3d at 980 (same, and adding that whether conduct shocks the conscience is a question of law).  Rather, the record shows only that the defendants made a decision *not* to enter into a sharing or tuition reimbursement agreement with the Blue Earth District that was placed squarely within their discretion by the controlling statute, Iowa Code § 282.8.  Moreover, for the reasons explained, below, that controlling statute survives an equal protection challenge to its constitutionality, so that it necessarily satisfies substantive due process. *See Friends of Lake View Sch. Dist.*, 578 F.3d at 763 n.13 ("'[A] rational basis that survives equal protection scrutiny also satisfies substantive due process analysis.'" (quoting *Executive Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 569 (8th Cir. 2008), in turn citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n.12 (1981), and *Independent Charities of Am., Inc. v. Minnesota*, 82 F.3d 791, 798 (8th Cir. 1996)).

The defendants are entitled to summary judgment on the Davidses' substantive due process claim.  *See Torgerson*, 643 F.3d at 1042-43 (stating the standards for summary judgment); *Cremona*, 433 F.3d at 620 (explaining that summary judgment is particularly

appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute).

***ii.     The "procedural" due process claim***

"'*[P]rocedural due process* imposes constraints on governmental decisions' that, among other things, deprive individuals of their property." *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (emphasis added) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" *Id.* (quoting *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)). Thus,

> "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon [v. Hansen]*, 168 F.3d [1109,] 1114 [(8th Cir. 1999)] (internal citation omitted).

*Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011).

Notwithstanding the defendants' alleged failure to provide the Davidses with any process before denying their request to enter into a tuition reimbursement or sharing agreement with the Blue Earth District, there was no procedural due process violation, here, as a matter of law.  Again, the Davidses have failed to demonstrate that they have any protected property interest in educating their children out-of-state at the expense of an in-state school district.  *Id.* (explaining that the first element of a procedural due process claim is proof of a protected liberty or property interest).  Furthermore, the Davidses have failed to prove that any process was due them before discretionary denial by the defendants of their request for a reimbursement agreement with the Blue Earth District that would have allowed their children to attend school in that out-of-state district

at the expense of the in-state school district. *Id.* (explaining that the second element is proof of deprivation of a property interest without due process).

For these additional reasons, the defendants are entitled to summary judgment on the Davidses' procedural due process claim. *See Torgerson*, 643 F.3d at 1042-43.

### 5. *The claim that § 282.8 is unconstitutional*

#### a. *Arguments of the parties*

Although the defendants do not make explicit arguments in their briefing of their Motion For Summary Judgment that IOWA CODE § 282.8 is constitutional, throughout their briefing, they do argue that IOWA CODE § 282.8 is reasonable.[3] They also state, in their Statement Of Material Facts, that, pursuant to that statute, they concluded that a sharing or reimbursement agreement with the Blue Earth District was not in the NICSD's best interest, because providing financial support for resident students to attend out-of-state schools could have increased the number of students leaving the NICSD. These arguments can be construed as support for a contention that IOWA CODE § 282.8, including the "distance restriction" in it, has a rational basis. They also argue, in various places in their briefs, that § 282.8 does not create any "class" on the basis of any protected characteristic, or otherwise. The Davidses, however, repeatedly argue that there is

---

[3] The likely reason for the defendants' oblique arguments about the constitutionality of § 282.8 and its "distance restriction" is that the Davidses' identification of their various claims in their Complaint is not a model of clarity. Rather, the Davidses' only references to the alleged unconstitutionality of § 282.8 in their Complaint are (1) allegations that "there is no rationale [sic] basis for the [distance] requirement, set forth in Section 282.8," where the "open enrollment" statute does not have "any distance restriction," *see* Complaint at ¶ 28, and (2) a prayer that the court enter declaratory judgment "that the distance restriction contained in Section 282.8 is unconstitutional," Complaint, Prayer at ¶ (d). Despite the rather oblique arguments by the defendants, I conclude that, by seeking summary judgment on all of the Davidses' claims and presenting the arguments that they have made, the defendants have squarely raised the issue of the constitutionality of § 282.8.

simply no rational basis for the "distance restriction" in § 282.8, when there is no such requirement in the "open enrollment" statute, IOWA CODE § 282.18.

### b.   *Analysis*

Section 1983 may also be used to challenge the constitutionality of a state statute, such as the Davidses' equal protection challenge to the constitutionality of IOWA CODE § 282.8. "Equal protection analysis turns on the classification drawn by the statute in question." *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999). Specifically, "[u]nless a law places a burden on a fundamental right or focuses on a suspect class, it is subject to a rational basis standard of scrutiny." *Id.* "Suspect classifications include those such as race, alienage, gender, or national origin." *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

"When a statute infringes upon a fundamental right, it cannot survive unless a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out the state interest," that is, the statute must survive "strict scrutiny." *Sylvester v. Fogley*, 465 F.3d 851, 858 (8th Cir. 2006). In contrast, where a state statute is a facially neutral law that does not infringe on a fundamental right, courts apply the "rational basis" test:

> On rational basis review, "the statute at issue carries … a 'strong presumption of validity.'" *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir.1999) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). The reviewing court must uphold the challenged law "if the classification drawn by the statute is rationally related to a legitimate [governmental] interest." *Crum v. Vincent*, 493 F.3d 988, 994 (8th Cir.2007) (alteration in original) (quoting *Gilmore v. County of Douglas*, 406 F.3d 935, 939 (8th Cir.2005)). To survive rational basis review, "all that must be shown is 'any reasonably conceivable state of facts that could provide a rational basis for the

> classification,' " so "it is not necessary to wait for further
> factual development." *Knapp*, 183 F.3d at 789 (quoting
> *Beach Commc'ns*, 508 U.S. at 313, 113 S.Ct. 2096).

*Friends of Lake View Sch. Dist. Inc. No. 25 of Phillips Cnty. v. Beebe*, 578 F.3d 753, 762-63 (8th Cir. 2009). As the Eighth Circuit Court of Appeals has explained, and I mentioned, above, "'[a] rational basis that survives equal protection scrutiny also satisfies substantive due process analysis.'" *Friends of Lake View Sch. Dist.*, 578 F.3d at 763 n.13 (quoting *Executive Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 569 (8th Cir. 2008), in turn citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n.12 (1981), and *Independent Charities of Am., Inc. v. Minnesota*, 82 F.3d 791, 798 (8th Cir. 1996)).

The Davidses admit that they do not satisfy what they call the "distance restriction" for attendance in an out-of-state school district in IOWA CODE § 282.8, because they live closer to the schools in the NICSD than they do to the schools in the Blue Earth District. Thus, they were simply not eligible to attend school in the Blue Earth District under that statute. To overcome this eligibility problem, the Davidses contend that the "distance restriction" is unconstitutional.

The Davidses have not argued that § 282.8 focuses on a suspect class, such as race, alienage, gender, or national origin. *Knapp*, 183 F.3d at 789. They have argued that a free education, paid with public funds, is a "fundamental" right, but neither the United States Supreme Court nor the Iowa Supreme Court clearly shares that view, under either federal or state law. *See Friends of Lake View Sch. Dist.*, 578 F.3d at 761 ("[T]he Supreme Court has rejected the proposition that education is a fundamental right under the Fourteenth Amendment." (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 34–35 (1973)); *Pippen*, 854 N.W.2d at 31 (Iowa 2014) (noting that this "very important constitutional issue," among others, "under the Iowa Constitution . . . instead of being decided earlier, remain very much alive today" (citing, *inter alia*, *King*, 818

N.W.2d at 47 n.52 (Appel, J., dissenting), as reserving the issue of whether there is a fundamental right to a free, public education under the Iowa Constitution); *King*, 818 N.W.2d at 15-16 (discussing, but not deciding, whether there is a fundamental right to a free, public education under the Iowa Constitution). Indeed, in *King v. State*, 818 N.W.2d 1 (Iowa 2012), the Iowa Supreme Court concluded that it would "defer for another day the question whether education *can* amount to a fundamental right under the Iowa Constitution," because the plaintiffs' allegations in their petition, "even if true, do not amount to a deprivation of such a right." 818 N.W.2d at 15-16 (emphasis in the original)). The same is true, here, because, even if a free education, at public expense, is a "fundamental" right under Iowa law, the Davidses have failed to show deprivation of such a right. Rather, as the defendants point out, the Davidses have admitted that, if they had chosen to send their children to school in the NICSD, their children would have received a free education, paid with public funds. In other words, there was no "deprivation" of the alleged right, where the Davidses chose not to exercise that right. Thus, only "rational basis" scrutiny is applicable here. *Id.*

The Davidses' challenge to the constitutionality of § 282.8 generally and its "distance restriction" specifically fails under "rational basis" scrutiny. *See Friends of Lake View Sch. Dist.*, 578 F.3d at 762-63 (explaining that rational basis scrutiny applies when strict scrutiny does not). First, there plainly *is* a "'reasonably conceivable state of facts that could provide a rational basis'" for the difference between students seeking out-of-state attendance under § 282.8 and students seeking "open enrollment" within the state pursuant to § 282.18, so "'it is not necessary to wait for further factual development.'" *Id.* (quoting *Knapp*, 183 F.3d at 789, in turn quoting *Beach Commc'ns*, 508 U.S. at 313). The defendants have asserted, and the Davidses have done nothing to rebut, that the discretion given to a school district under § 282.8 is rationally related to concerns not to use funding intended for in-state schools to fund out-of-state schools and not to encourage

an exodus of students from the in-state district. The "fact," asserted by the Davidses, that a reimbursement or sharing agreement might cause a reciprocal flow of students from out-of-state into the in-state district does not make concerns about a net loss of students "irrational." Another rational basis for the difference in treatment, specifically relating to the "distance requirement" in § 282.8, is, as I noted above, that it ensures that the desire to attend an out-of-state school, rather than an in-state school, pursuant to § 282.8, is a legitimate matter of convenience, because the out-of-state school is nearer the student's residence than the in-state school. This limitation is rational, particularly where attendance out-of-state does not serve the purposes of § 282.18 of "permit[ing] a wide range of educational choices *for children enrolled in schools in this state* and . . . maximiz[ing] ability to use those choices." IOWA CODE § 282.18 (emphasis added).

The defendants are also entitled to summary judgment on the Davidses' challenge to the constitutionality of § 282.8 and its "distance restriction." *See Torgerson*, 643 F.3d at 1042-43 (stating the standards for summary judgment); *Cremona*, 433 F.3d at 620 (explaining that summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute).

### C. The Davidses' State-Law Claim

The Davidses' only remaining claim, in light of the foregoing, is a state-law claim, which is either for "unjust enrichment" or "fraud." In their Complaint, the Davidses allege that the NICSD's receipt of funds for the education of the Davidses' children, but failure to reimburse the Blue Earth District, "constitutes fraud and unjust enrichment," *see* Complaint at ¶¶ 23-29, but their prayer is only for a declaration that the conduct of the defendants "constitutes unjust enrichment," not "fraud." *Id.*, Prayer at (c). Thus, it

is not entirely clear whether the Davidses are asserting a "fraud" claim, and "unjust enrichment" claim, or both.

### 1.    *Arguments of the parties*

The defendants argue that what they call the Davidses' "unjust enrichment through fraud" claim is not viable, in light of the elements of a "fraud" claim under Iowa law. The defendants argue that the Davidses cannot establish such a "fraud" claim, because the "open enrollment" provisions only apply to students seeking enrollment in another Iowa school district, but do not require that "funding" follow a student out-of-state. They argue that nothing requires funding provided to a school district to be used to educate students who voluntarily do not enroll in a school in that district. They also argue that nothing in applicable law makes money allotted for the education of the Davidses' children "their" money.

The Davidses have done nothing in their response to the defendants' Motion For Summary Judgment to clarify the nature of this claim. Indeed, it is not clear to me that the Davidses have made any response to the defendants' arguments for summary judgment on this claim. The only reference to this claim that I can find in the Plaintiffs' Brief is the following in the Statement Of The Facts section: "The Defendant, [NICSD], receives the sum of $6,001 from the [IDOE] for each student it certifies to the [IDOE] and, accordingly, is receiving funds for the education of the Plaintiffs' children, constituting unjust enrichment." Plaintiffs' Brief at 3.[4]

In their Reply Brief (docket no. 26), the defendants reiterate that the Davidses have done nothing to show that "funding" must follow a student out-of-state.

---

[4] In contrast, the Davidses allotted a substantial part of their brief in resistance to the defendants' Motion For Summary Judgment to argument that the defendants are "state actors," which was a matter that the defendants had not put at issue in their Motion.

## 2. Analysis

I conclude that the Davidses' complete failure to respond to the defendants' arguments about the viability of a "fraud" claim, either by asserting a legal argument in support of such a claim or by attempting to generate genuine issues of material fact on the elements of such a claim, constitutes abandonment of a "fraud" claim and warrants summary judgment in the defendants favor on such a claim. *See Torgerson*, 643 F.3d at 1042-43 (explaining the parties' respective burdens on summary judgment and the consequences of the non-movant's failure to meet its burden). Therefore, I will only consider further whether the defendants are also entitled to summary judgment on the Davidses' state-law claim, construed as an "unjust enrichment" claim.

As the Iowa Supreme Court has explained, "The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001) (citing *Credit Bureau Enters., Inc. v. Pelo*, 608 N.W.2d 20, 25 (Iowa 2000)) (emphasis added). To recover for unjust enrichment under Iowa law, the plaintiff must show the following: "(1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *State ex rel. Palmer*, 637 N.W.2d at 154–55; *see also Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting these elements from *State ex rel. Palmer*, 637 N.W.2d at 154–55). The benefit in question need not "be conferred directly by the plaintiff," because "[t]he critical inquiry is that the benefit received be at the expense of the plaintiff." *Id*. at 155.

The defendants admit that the NICSD has received funding from the IDOE for the purpose of educating each of the Davidses' children. Thus, at least arguably, the first element of an "unjust enrichment" claim—the defendants' receipt of a benefit—is satisfied

in this case. *Id.* Even supposing that there are genuine issues of material fact that the benefit was conferred, at least indirectly, by the Davidses, *see id.*, through their payment of property and income taxes that fund state education, the Davidses have not generated any genuine issues of material fact that allowing the NICSD to retain the funds in question is unjust under the circumstances. *Id.* As explained, above, the Davidses have cited no statute requiring the NICSD to use the funds in question to pay an out-of-state school district for their children's education or to pay those funds to the Davidses, if their children do not actually attend a NICSD school. Also, the Davidses remain entitled to the benefit of the funds provided by the IDOE to the NICSD for the education of their children, because they have admitted that, if they had chosen to send their children to school in the NICSD, their children would have received a free education, paid with public funds. Under these circumstances, I conclude that, as a matter of law, the Davidses cannot prove the last element of an "unjust enrichment" claim, and the defendants are, consequently, entitled to summary judgment on that claim. *See Torgerson*, 643 F.3d at 1042-43 (explaining the parties' respective burdens on summary judgment and the consequences of the non-movant's failure to meet its burden).

### III. CONCLUSION

Upon the foregoing, the defendants' February 19, 2015, Motion For Summary Judgment (docket no. 14) is **granted**, in its entirety. Judgment shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 16th day of July, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

37